# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CYRIL L. EDWARDS,
         Appellant,

      v.

UNITED STATES POSTAL SERVICE,
         Agency.

DOCKET NUMBER
NY-0752-15-0030-M-1

DATE: July 19, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>William E. Burkhart, Jr.</u>, Esquire, Rochester, New York, for the appellant.

<u>Roderick D. Eves</u>, Esquire, St. Louis, Missouri, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the remand initial decision, which sustained the penalty of a reduction in pay and grade. For the reasons discussed below, we GRANT the appellant's petition for review and AFFIRM the remand initial decision AS MODIFIED to mitigate the penalty to a 30-day suspension.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2　　The appellant was a Supervisor, Maintenance Operations, stationed at the agency's Rochester Processing and Distribution Center (P&DC). *Edwards v. U.S. Postal Service*, MSPB Docket No. NY-0752-15-0030-I-1, Initial Appeal File (IAF), Tab 7 at 42. On March 17, 2014, when he was scheduled to work an 8-hour tour, he worked less than 2 hours. IAF, Tab 36 at 4. A few days later, he told an acting supervisor, who was charged with recording time and attendance, to credit him with 8 work hours for the day. IAF, Tab 7 at 29. On July 2, 2014, the agency proposed reducing the appellant in grade and pay to a Mail Handler position based on a charge of improper conduct. *Id.* at 23-26. Essentially, the agency alleged that the appellant should have but failed to submit a PS Form 3971 to document his early departure, but even if he had, he would not have been eligible to record his absence as work time anyway. *Id.* After the appellant responded orally to the proposed action, the deciding official upheld the reduction in grade and pay. *Id.* at 15-21, 28-30.

¶3　　The appellant filed a Board appeal arguing, among other things, that the agency treated him more harshly than several employees who worked in the same unit and committed similar offenses. *Edwards v. U.S. Postal Service*, MSPB Docket No. NY-0752-15-0030-I-1, Initial Decision (ID) at 14-15 (June 9, 2015); IAF, Tab 1, Tab 31 at 53-57. After a hearing, the administrative judge issued an initial decision that sustained the reduction in grade and pay, finding that the appellant failed to show that the charges and the circumstances surrounding the charged behavior of two employees was substantially similar to his case as they involved different work units, deciding officials, and misconduct, and that he also failed to establish that another employee was a valid comparator. ID at 15. She further considered that the appellant's supervisor, a manager of Distribution

Operations (MDO), was also reduced in grade to a nonsupervisory position for a similar offense.[2] *Id.*

¶4     The appellant filed a petition for review in which he challenged, among other things, the administrative judge's findings on consistency of the penalty. *Edwards v. U.S. Postal Service*, MSPB Docket No. NY-0752-15-0030-I-1, Petition for Review (PFR) File, Tab 3. The Board affirmed the initial decision as modified regarding the penalty analysis. *Edwards v. U.S. Postal Service*, MSPB Docket No. NY-0752-15-0030-I-1, Final Order (Jan. 5, 2016). In particular, the Board found that the deciding official properly considered the similar penalty that he imposed on MDO 2. *Id.* at 10.

¶5     The appellant petitioned the Federal Circuit for review. *Edwards v. U.S. Postal Service*, 662 F. App'x 951 (Fed. Cir. 2016). While the petition was pending, a Merit Systems Protection Board administrative judge issued an initial decision in MDO 2's appeal, mitigating her penalty to a 30-day suspension.[3] *Swan v. U.S. Postal Service*, MSPB Docket No. NY-0752-15-0020-I-1, Appeal File (*Swan* AF), Tab 30, Initial Decision (June 7, 2016). The court determined that the Board should reassess the reasonableness of the penalty in the instant appeal in light of *Swan*. It therefore vacated the Board's Final Order and remanded for further proceedings. *Edwards v. U.S. Postal Service*, MSPB Docket No. NY-0752-15-0030-M-1, Remand File (RF), Tab 1, Tab 8 at 17-34. On remand, the administrative judge again sustained the reduction in grade and pay. RF, Tab 12, Remand Initial Decision (RID).

---

[2] The appellant's supervisor, hereinafter referred to as MDO 2, was a witness in the instant appeal.

[3] The initial decision in *Swan* became final when neither party petitioned for review. *See* 5 C.F.R. § 1201.113.

¶6        The appellant has filed a petition for review, the agency has responded in opposition to the appellant's petition, and the appellant has filed a reply to the agency's response.  Remand Petition for Review (RPFR) File, Tabs 2, 4-5.[4]

## ANALYSIS

¶7        Choice of penalty must be based on an individualized assessment of the facts and circumstances surrounding the particular case.  *Douglas v. Veterans Administration*, [5 M.S.P.R. 280](#), 303 (1981).  As pertinent to the issue of penalty in this case, the record sets forth the following facts and circumstances.

¶8         The appellant was a Fair Labor Standards Act (FLSA)-special exempt employee, and such employees are subject to particular pay rules.  Hearing Transcript (Tr.) at 9, 40-41 (testimony of the District Manager of Labor Relations (MLR)).  As relevant here, a special exempt employee may only receive one category of pay per work day.  Whereas an FLSA-covered employee may work for part of a shift, take leave for another part, and receive a combination of paid work time and paid leave to account for the entire shift, a special exempt employee in the same situation must account for the entire shift with only a single category of pay—either paid leave or paid work time.  Tr. at 40-41 (testimony of the MLR).  In other words, for pay purposes, a special exempt employee must account for his time in 8-hour increments.

¶9        One category of leave available to a special exempt employee is "personal absence."  Personal absence is paid leave that does not count against an employee's accrued leave balance; essentially, the employee is paid as though he

---

[4] The appellant makes the following challenges to the administrative judge's decision to sustain the charge:  the agency did not appropriately notify him either of the proper leave-requesting procedures or that his actions could result in discipline; the agency misinterpreted its own regulations; and his managers gave him permission to take leave.  RPFR File, Tab 2 at 10-17.  He also argues that the administrative judge misinterpreted agency supervisory rules and that the administrative judge's credibility determinations are not entitled to deference.  *Id.* at 17-23.  However, the Federal Circuit remanded the appeal for the sole purpose of considering the penalty determination.  Thus, we have not considered these arguments.

worked the entire shift even though he was absent for part of it. Tr. at 41, 45-46 (testimony of the MLR). Personal absence is available to a special exempt employee who works at least 4 hours of his scheduled shift. Generally, an employee who works less than 4 hours of his shift is ineligible for personal absence time and must cover the entire day with another form of leave. IAF, Tab 27 at 86; Tab 29 at 39-40; Tr. at 42, 45-46 (testimony of the MLR). There is, however, a limited exception to that rule; if an employee's part-day absence was occasioned by an emergency and he was unable to return to duty, he is eligible for personal absence for that day even if he worked fewer than 4 hours. IAF, Tab 27 at 86; Tab 29 at 39-40; Tr. at 42 (testimony of the MLR).

¶10    On March 17, 2014, the appellant was scheduled to work Tour 1, from midnight to 8:30 a.m. IAF, Tab 30 at 43. He clocked in at 12:19 a.m. *Id.* at 20. Shortly after he arrived, the appellant observed that the operation that he was supposed to be supervising was already being covered by another supervisor. Tr. at 221 (testimony of MDO 1). The appellant then approached the two MDOs on duty and inquired about the situation.[5] Tr. at 221 (testimony of MDO 1), 449 (testimony of the appellant). The MDOs informed the appellant that there had been a scheduling error, that his operation was already being covered, and that he could go home. Tr. at 221-22 (testimony of MDO 1), 449 (testimony of the appellant). The appellant walked the workroom floor to ensure that everything was in hand, performed some miscellaneous tasks, and prepared to leave. Tr. at 449 (testimony of the appellant). Before he left, the appellant asked the MDOs whether they would "take care of" his time. *Id.* (testimony of the appellant). After MDO 2 replied that she would, the appellant left the building at 1:49 a.m.,

---

[5] There were two MDOs at the facility when the appellant arrived because of the change in shifts and the slight overlap during the transition; MDO 1 was closing out Tour 3 from the prior evening and MDO 2 was coming on duty to start the early morning Tour 1 shift. Tr. at 222 (testimony of MDO 1).

but neglected to clock out. IAF, Tab 30 at 20; Tr. at 449 (testimony of the appellant).

¶11 Before leaving early from a shift, a Postal Service employee is required to obtain approved leave by submitting to his manager a PS Form 3971, Request for Notification of Absence. IAF, Tab 29 at 8; Tr. at 24-25 (testimony of the MLR), 272-73 (testimony of Supervisor of Distribution Operations (SDO 1)). However, the appellant in this case did not submit a PS Form 3971 when he left work early on the date in question. IAF, Tab 29 at 27.

¶12 At the end of the pay period, on March 20, 2014, the appellant's timekeeper, an acting supervisor, notified him that, although the time and attendance system indicated that he had clocked in on March 17, 2014, at 12:19 a.m., there was no clock ring to end his tour. IAF, Tab 7 at 39; Tr. at 454 (testimony of the appellant). Annoyed that MDOs 1 and 2 had not already adjusted his records for him, the appellant instructed the Acting Supervisor to record for him a full 8 hours of work time for that shift. IAF, Tab 29 at 27; Tr. at 454. Thus, instead of requesting personal absence or some other type of leave on a PS Form 3971 like he should have, the appellant saw to it that he was paid for 8 hours of work for that day and that the clock rings reflected that he actually worked 8 hours.

¶13 In reviewing an agency-imposed penalty, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency; the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised within tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 302. "When the Board sustains all of an agency's charges[,] the Board may mitigate the agency's original penalty to the maximum reasonable penalty when it finds the agency's original penalty too severe." *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). In assessing the reasonableness of the penalty, the Board will consider the

nonexhaustive list of factors set forth in *Douglas*, 5 M.S.P.R. at 305-06. *Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 18.

¶14   The first *Douglas* factor, and the one upon which the Board places primary importance, is the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated. *See Spencer v. U.S. Postal Service*, 112 M.S.P.R. 132, ¶ 7 (2009). In this case, the deciding official found, and the administrative judge agreed, that this factor weighed heavily against the appellant because the appellant violated the very time and attendance regulations that it was his job to enforce, and he did so intentionally. IAF, Tab 7 at 16-17; ID at 15; Tr. at 365 (testimony of the deciding official).

¶15   We agree that this misconduct was particularly problematic given the appellant's role as a supervisor and his responsibility for enforcing agency policy against others. *See Martin v. Department of Transportation*, 103 M.S.P.R. 153, ¶ 13 (2006) (finding that offenses related to computer misuse were especially serious for a supervisor who was responsible for, among other things, enforcing agency computer use policies), *aff'd*, 224 F. App'x 974 (Fed. Cir. 2007). We also agree that the appellant's conduct was intentional in the sense that he chose not to submit a PS Form 3971 as required and deliberately instructed the timekeeper to record 8 hours of work for the day in question. However, we do not find sufficient evidence to show that the appellant intended thereby to defraud the agency or otherwise gain some benefit to which he knew he was not entitled. Instead, we find it more likely that this improper recording of work time resulted from the confluence of the appellant's failure to understand the personal absence rules and his failure to submit the PS Form 3971 which would have acted as a

safeguard against such a mistake.[6] We find that the appellant's failure to familiarize himself with the timekeeping rules and his lax time and attendance practices were serious acts of negligence for an employee in his position, but they were neither malicious nor the product of dishonesty. We further note the lack of any evidence that the charged misconduct was anything more than a one-time occurrence.

¶16    Regarding the second *Douglas* factor, the deciding official found that the appellant's supervisory position was an aggravating factor. IAF, Tab 7 at 17; Tr. at 365-66 (testimony of the deciding official). We agree. Agencies are entitled to hold supervisors to a higher standard than nonsupervisors because they occupy positions of trust and responsibility. *Gebhardt v. Department of the Air Force*, [99 M.S.P.R. 49](), ¶ 21 (2005), *aff'd*, 180 Fed.Appx. 951 (Fed. Cir. 2006).

¶17    Regarding the third factor, the appellant's lack of prior discipline weighs in his favor. IAF, Tab 7 at 17; Tr. at 367 (testimony of the deciding official). Likewise, the appellant's 35 years of Federal service, including 13 years of good service with the agency, is significantly mitigating under *Douglas* factor 4. IAF, Tab 7 at 17; Tr. at 367-68 (testimony of the deciding official).

¶18    Regarding the fifth factor, the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in him, the deciding official found that this factor weighed against the appellant. IAF, Tab 7 at 17; Tr. at 368 (testimony of the deciding official). Again, we agree. As the deciding official explained, the appellant's misconduct had caused him to lose trust and confidence in the appellant's ability to follow

---

[6] It is clear from the record evidence that the appellant did not understand the personal absence rules. IAF, Tab 27 at 86; Tab 29 at 39-40; Tr. 433-34 (testimony of the appellant). Two other witnesses testified that they believed that the appellant would have been eligible for personal absence under the circumstances. Tr. at 253-55 (testimony of MDO 2), 431-32 (testimony of SDO 2). Based on this testimony, we find that other supervisors and managers at the Rochester P&DC shared the appellant's misunderstanding of the personal absence rules. We therefore find that, regardless of whether the appellant's misunderstanding was reasonable, it was probably genuine.

and enforce agency rules, as a supervisor is required to do. Tr. at 368 (testimony of the appellant's supervisor).

¶19    Regarding *Douglas* factor 6, consistency of the penalty with those imposed upon other employees for the same or similar offenses, the deciding official stated that there was only one similarly situated employee—the appellant's own supervisor, MDO 2—who had committed similar misconduct, and he had imposed the same reduction in grade penalty against her. IAF, Tab 7 at 17-18; Tr. at 368-69 (testimony of the deciding official). The Board agreed with the deciding official's assessment, Final Order, ¶¶ 14-18; ID at 14-15, but this was before it mitigated the penalty in MDO 2's case to a 30-day suspension. Although it was the Board and not the agency that mitigated the penalty in the comparator's case, the Federal Circuit remanded this appeal for the Board to reassess this penalty factor in light of that mitigation. RF, Tab 1; *see Norris v. Securities and Exchange Commission*, 675 F.3d 1349, 1355 57 (Fed. Cir. 2012) (holding that the Board's penalty assessment must account for any post–adverse action mitigation evidence that was not available to the agency).

¶20    On remand, the administrative judge found that the appellant's supervisor was similarly situated to him for purposes of this penalty factor because both employees were supervisors, both left work early, and both neglected to complete a PS Form 3971 requesting leave for the hours that they were not at work. RID at 5-6. We agree with the administrative judge's finding. Although the appellant's supervisor left work due to illness and therefore might have been able to claim her 6-hour absence as work time had she submitted the required PS Form 3971, the charged misconduct was essentially similar and the circumstances of the appellant's case closely resemble those of his supervisor.[7] *Id.*; *see*

_____

[7] The agency's rules provide that a supervisor who is absent for more than 4 hours of his 8-hour shift may not record his absence as work time unless his absence was occasioned by an emergency and he was unable to return to duty. IAF, Tab 27 at 86; Tab 29 at 39-40. An illness after 2 hours of work is specifically cited as an example of when this exception may apply. IAF, Tab 27 at 86.

*Williams v. U.S. Postal Service*, [586 F.3d 1365](#), 1368-69 (Fed. Cir. 2009); *Singh v. U.S. Postal Service*, [2022 MSPB 15](#), ¶ 13. Indeed, the deciding official's analysis of each and every *Douglas* factor was practically identical for both employees. *Compare* IAF, Tab 7 at 16-19 *with Swan* AF, Tab 9 at 15-18. We find that the chief difference between the appellant and MDO 2 was that MDO 2 occupied a higher-graded managerial position that carried with it even greater responsibility. Nevertheless, the administrative judge found that the mitigation in *Swan* did not warrant a different outcome for the instant appeal because it was the Board rather than the agency that treated these two employees differently. For the following reasons, we do not agree with that analysis.

¶21    First, the Federal Circuit specifically instructed the Board to reassess this penalty factor for the appellant in light of its decision in *Swan*. RF, Tab 1 at 6-7. Discounting the *Swan* decision as irrelevant to this penalty factor is contrary to the court's explicit instructions. Second, the Board has always been guided by its own precedent in these matters and has looked to what it has previously determined to be a reasonable penalty for a given offense. *E.g.*, *Marcell v. Department of Veterans Affairs*, [2022 MSPB 33](#), ¶ 14; *Dias v. Department of Veterans Affairs*, [102 M.S.P.R. 53](#), ¶ 16 (2006), *aff'd*, 223 F. App'x 986 (Fed. Cir. 2007); *Seas v. U.S. Postal Service*, [78 M.S.P.R. 569](#), 573-74 (1998); *Gibbs v. Department of the Treasury*, [21 M.S.P.R. 646](#), 650-51 (1984). Although *Swan* is not a precedential decision and is not binding on the Board, considering how closely the two cases are linked, we find that it is appropriate for us to consider *Swan* in assessing the reasonableness of the penalty in the instant appeal. We therefore find that the consistency of the penalty factor weighs in favor of mitigation.

¶22 The eighth penalty factor concerns the notoriety of the offense.[8] *Douglas*, 5 M.S.P.R. at 305. The deciding official found that this factor weighed in the appellant's favor because his misconduct was not known outside the agency and was not likely to damage the agency's reputation. IAF, Tab 7 at 18; Tr. at 369-70 (testimony of the deciding official).

¶23 Factor 9, however, concerns the clarity with which the employee was on notice of any rules that were violated, and the deciding official found that this factor weighed against the appellant. Tr. at 370 (testimony of the deciding official). Specifically, he found that, although the appellant had not been specifically instructed about this, time and attendance rules for supervisors were widely known within the agency, and he did not see how anyone could think that 1.5 hours of work could entitled an employee to 8 hours of pay without documentation to support it. Tr. at 370 (testimony of the deciding official). We agree with the deciding official. Although the appellant was not actually aware that his absence was ineligible to be recorded as personal absence work time, he was aware of the need to submit a PS Form 3971 to request such leave. IAF, Tab 7 at 28; Tr. at 157 (testimony of the proposing official).

¶24 *Douglas* factor 10 concerns the employee's potential for rehabilitation. *Douglas*, 5 MSPR at 305. The decision letter indicates that the deciding official found this factor neutral, IAF, Tab 7 at 18, but at the hearing, the deciding official testified that this factor weighed against the appellant, Tr. at 370 (testimony of the deciding official). His rationale in both instances, however, was consistent. The decision letter indicates that, although the deciding official believes in rehabilitation, his loss of trust and confidence in the appellant requires that the appellant demonstrate rehabilitation in a nonsupervisory role. IAF, Tab 7

---

[8] It is undisputed that *Douglas* factor 7 is inapplicable to these proceedings because the U.S. Postal Service does not have a table of penalties. IAF, Tab 7 at 18; Tr. at 369 (testimony of the deciding official); *see Farris v. U.S. Postal Service*, 14 M.S.P.R. 568, 575 (1983).

at 18. Similarly, the deciding official testified that, in light of the breach of trust, he could no longer support the appellant in a supervisory or managerial role. Tr. at 370-71 (testimony of the deciding official). We find that the deciding official did not give due consideration to this factor. The agency's loss of trust and confidence in an employee is not the same as the employee's potential for rehabilitation. *See Douglas*, 5 MSPR at 305. Based on the record before us, we find that the appellant now understands that he should have used a PS Form 3971 to request written approval for leave, and that he would not be likely to commit similar misconduct in the future. Tr. at 461-63 (testimony of the appellant).

¶25    *Douglas* factor 11 concerns other mitigating circumstances, such as unusual job tensions, provocation, or other circumstances that may have contributed to the misconduct in question. 5 M.S.P.R. at 305. The deciding official found that this was a neutral factor because there were no such circumstances present in the appellant's case. IAF, Tab 7 at 18-19; Tr. at 371 (testimony of the deciding official). However, we observe that the agency contributed to this problem by overscheduling supervisors on the night in question, whereupon MDO 2 dismissed him from his shift early with the ambiguous assurance that she would "take care of" his time. Tr. at 449 (testimony of the appellant). Although the appellant took too much license from this, and these circumstances do not justify his subsequent actions, they are a factor to consider. Furthermore, we find evidence that unfamiliarity with personal absence rules and lax timekeeping practices were endemic at the Rochester P&DC during the time period in question, and it was not unusual for employees to take leave by verbally notifying their supervisors without obtaining written approval as required. IAF, Tab 7 at 28, Tab 21 at 19; Tr. at 115-17, 132-33 (testimony of the Acting Supervisor), 254-56 (testimony of MDO 2), 429-32 439 (testimony of the Supervisor of District Operations), 463-64, 475-76 (testimony of the appellant).

¶26    Finally, as to *Douglas* factor 12, the adequacy of alternative sanctions, the deciding official testified that he considered this factor but determined that a

reduction in grade was fair under the circumstances, especially given the breach of trust. IAF, Tab 7 at 19; Tr. at 371-72 (testimony of the deciding official). Although we find that the deciding official gave serious consideration to this factor, we do not agree with his overall assessment.

¶27     The appellant's offense in this case can fairly be characterized as one of negligence. His failure to familiarize himself with the personal absence rules, combined with his failure to follow leave requesting procedures, created a situation in which he was paid for 8 hours of work time that should have been charged to his accrued leave. Not only that, but the appellant also failed to correct the problem through proper procedures with his timekeeper when he had the opportunity to do so by filling out a PS Form 1260 to correct the clock ring error and submitting a PS Form 3971 to request written approval for leave. Had the appellant corrected any of these deficiencies, this entire matter could have been avoided. This cavalier approach to time and attendance is not appropriate for a Federal employee, particularly a supervisor. Nevertheless, the appellant's one-time infraction was not malicious, and his many years of good service weigh heavily in his favor. Furthermore, we find that the appellant has rehabilitative potential and that lesser discipline will be sufficient to impress upon him the importance of learning and following the time and attendance rules and dissuade him from repeating the offense. Considering the totality of the circumstances, we find that the maximum reasonable penalty in this case is the same penalty that MDO 2 received for substantially the same offense—a 30-day suspension.

## ORDER

¶28     We ORDER the agency to cancel the appellant's reduction in grade and pay and restore him to his former position of EAS-17 Supervisor, Maintenance Operations, effective October 14, 2014, and substitute a 30-day suspension. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The

agency must complete this action no later than 20 days after the date of this decision.

¶29       We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶30       We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶31       No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶32       For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[10]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                              /s/ for
                              _____
                              Jennifer Everling
                              Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.